IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PATRICK MASTERSON | § | |
| | § | |
| V. | § | C.A. No. _____ |
| | § | |
| METROPOLITAN LIFE | § | |
| INSURANCE COMPANY | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

PATRICK MASTERSON, Plaintiff, files this Original Complaint against Metropolitan Life Insurance Company, Defendant, pursuant to the Employee Retirement Income Security Act of 1974 (ERISA) 29 U.S.C. §1132(a)(1)(b) due to its wrongful denial of his long-term disability claim.

## PARTIES

1.    Plaintiff Patrick Masterson is a resident of Montgomery County, Texas.

2.    Defendant Metropolitan Life Insurance Company ("MetLife") is a domestic or foreign insurance company doing business in various states, including in the State of Texas. It can be served through its registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201-3136, or wherever it may be served.

## JURISDICTION AND VENUE

3.    This action against MetLife arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq*. This Court has jurisdiction over this action pursuant to 29 U.S.C. §1132(e)(1).

4.    Venue is proper in this District and Division pursuant to 29 U.S.C. §1132(e)(2) because Defendant maintains business activity in and may be found in this district.

1

5.    Pursuant to 29 U.S.C. §1132(h), this Complaint has been served upon the Secretary of Labor, Pension and Welfare Benefits Administration, at 200 Constitution Avenue N.W., Washington, D.C. 20210 and the Secretary of the Treasury at 111 Constitution Avenue N.W., Washington, D.C. 20024, by certified mail return receipt requested.

## STATEMENT OF FACTS

6.    At all relevant times, Mr. Masterson was an employee of MMWK Management, his employer, as those terms are defined in 29 U.S.C. §§1002(5) and (6).

7.    At all relevant times, Mr. Masterson was a participant and beneficiary of a long-term disability insurance plan ("Plan") as those terms are defined by 29 U.S.C. §§ 1002(7) and (8). His insurance premium required for coverage under the Plan was fully paid.

8.    The LTD PLAN is an "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1), and may be sued under ERISA as an entity, pursuant to 29 U.S.C. § 1132(d)(1).

9.    At all times relevant hereto Plaintiff's employer, MMWK Management was the "plan sponsor" as that term is defined by 29 U.S.C. § 1002(16)(B).

10.   MetLife was the Plan Administrator of the Plan and a fiduciary as those terms are defined by 29 U.S.C. §§1002, (16) and (21).

11.   MetLife was the Insurer of the Plan.

12.   The Plan provided for payment of long-term disability benefits if Mr. Masterson became "disabled", as defined in the Plan.

2

13.   At all relevant times, Mr. Masterson was "disabled" as that term is defined in the

Plan, and this claim relates to benefits under the Plan.

14.   Mr. Masterson has filed proof of claim and performed all other conditions

precedent to recovering benefits under the Plan for the losses claimed.

15.   At all times material to this action, the Plan was in full force and effect.

16.   The Plan is a binding contract of insurance between the parties.

17.   The purpose of the Plan was to pay to Mr. Masterson a specified monthly sum if he

became disabled. "Disability" and "Disabled" is defined in the Policy as:

"Disabled or Disability means that, due to Sickness or as a direct result of
accidental injury:
   - You are receiving Appropriate Care and Treatment and complying with the
     requirements of such treatment; and
   - You are unable to earn:
   - During the Elimination Period and the next 24 months of Sickness or
     accidental injury, more than 80% of Your Predisability Earnings at Your
     Own Occupation from any employer in Your Local Economy; and
   - After such period, more than 60% of your Predisability Earnings from any
     employer in Your Local Economy at any gainful occupation for which You
     are reasonably qualified taking into account Your training, education and
     experience.

For purposes of determining whether a Disability is the direct result of an
accidental injury, the Disability must have occurred within 90 days of the
accidental injury and resulted from such injury independent of other causes."

18.   Mr. Masterson was an eligible plan participant of the Plan.

19.   Mr. Masterson became disabled and stopped working on September 30, 2020 due

to cervical spine pain, low back pain, lumbar spondylosis, cervical radiculopathy,

headaches, Traumatic Brain Injury, Complex Pain Regional Syndrome, right ankle

and knee pain, and nerve pain.

20.   MetLife denied Mr. Masterson's LTD claim on August 18, 2021.

21.    Mr. Masterson filed a timely appeal.

22.    MetLife denied the appeal by letter dated July 27, 2022.

23.    During this time, Mr. Masterson's disability was fully supported by his treating physicians.

24.    Since September 30, 2020, Mr. Masterson has continued to meet the definition of disability as defined by the Policy and continues to be disabled from not only his occupation, but any occupation.

25.    Mr. Masterson has not worked in any occupation for which he is or may reasonably become qualified for based on his education, training and experience.

26.    Mr. Masterson applied for Social Security Disability benefits, which was required under the MetLife Policy.

27.    Mr. Masterson has exhausted his administrative remedies.

## CLAIMS & CAUSE OF ACTION

28.    Plaintiff realleges paragraphs 1 through 27 of the Complaint, incorporating them by reference.

29.    As Plan fiduciary, MetLife is obligated to handle claims for the benefit of the Plan and Plan beneficiaries, and to deliver the benefits promised in the Plan. It is also obligated as a fiduciary to conduct their investigation of a claim in a fair, objective, and evenhanded manner.

30.    MetLife's review of Mr. Masterson's claim was instead biased and outcome oriented. This was in part reflected by its denial of Mr. Masterson's claim, even after being presented with evidence of his disability. It was also reflected in

MetLife's unreasonable reliance on reviewers who lacked the training, education, and experience to competently review his claim.

31. On information and belief, MetLife selected these reviewers for Mr. Masterson's claim to deny his claim. This pattern of conduct evidences a biased approach and treatment of MetLife disability claims, including this one.

32. MetLife's focus on profits over people has created its institutional bias. MetLife had a fiduciary duty to fully and fairly review this claim. In this instance, its denial was made without any reasonable basis.

33. MetLife's interpretation of the Plan and the terms of the Plan was not legally correct. It was also contrary to a plain reading of the Plan language.

34. MetLife's interpretation of the Plan and Plan language was contrary to that of the average Plan participant. It was contrary to the common and ordinary usage of Plan terms. Alternatively, the Policy language upon which MetLife based its denial decision was ambiguous. The ambiguous nature of those terms requires that they be construed against MetLife and in favor of coverage for Mr. Masterson.

35. MetLife's denial was made without substantial supporting evidence. Its decision to deny Mr. Masterson's claim was instead based upon rank speculation and guesswork. MetLife's denial decision was *de novo* wrong. Alternatively, it was arbitrary and capricious.

36. MetLife failed to comply with 29 C.F.R. §2560.503-1(h)(iii) and (m), which provides an employee whose claim is denied has the right to a free complete copy of all "relevant" documents, records, and information that has been relied upon, submitted, considered, or generated in the course of making a determination.

37.    The decision-making process did not comport with 29 U.S.C. §1133's requirement that any notice of the denial must contain the specific reasons for such denial, written in a manner calculated to be understood by the participant, and must comport with the Department of Labor Regulations.

38.    The decision-making process did not provide a reasonable opportunity to Mr. Masterson for a full and fair review of the decision denying the claim, as is required by 29 U.S.C. §1133 and 29 C.F.R. 2560.503-1.

39.    The appellate procedures did not provide Mr. Masterson with a full and fair review.

40.    MetLife has refused to pay Mr. Masterson sums due pursuant to the terms of the Plan since September 30, 2020.

41.    MetLife's termination of Mr. Masterson's claim breached the Plan terms. This breach violated 29 U.S.C. §1132(a)(1), entitling Mr. Masterson to the LTD benefits to which he is entitled under the Plan, along with pre-judgment interest on the amounts due and unpaid, all for which he now sues.

## STANDARD OF REVIEW

42.    The default standard of review for denial of a benefit claim is *de novo*. Where the Plan confers discretion on the Claims Administrator, an abuse of discretion standard of review may apply.

43.    The Plan may contain a discretionary clause or language MetLife may construe as affording it discretion to determine eligibility for benefits, to interpret the terms of the Plan, and determine the facts. MetLife has the burden to establish that any such clause exists. MetLife's denial under this standard of review, if any, was an abuse of discretion. It was arbitrary and capricious.

44.  Alternatively, the standard of review of this claim should be *de novo,* affording MetLife no discretion in its interpretation of the terms of the Policy and Plan or in its factual determinations. Both factual conclusions and legal determinations are reviewed *de novo* by the Court. *Ariana v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018).

45.  The Plan or Policy was delivered in Texas and is subject to the laws of that jurisdiction. Texas law applies under the ERISA savings clause. Texas has banned the use of discretionary clauses in insurance policies issued in this state. TEX. INS. CODE §1701.062; 28 Tex. ADMIN. CODE §3.1202. Accordingly, review of Mr. Masterson's claim and MetLife' claims handling conduct, both in its interpretation of terms of the Plan, and in its determination of the facts, should be *de novo*.

### REQUEST FOR PREJUDGMENT INTEREST & AN ACCOUNTING

46.  Mr. Masterson requests, in addition to the benefits withheld, prejudgment interest on any such award. He is entitled to prejudgment interest as additional compensation, and pursuant to Texas Insurance Code §1103.104, or on principles of equity.

47.  The Plan and Policy do not contain a rate of interest payable on the benefit amount wrongfully withheld.

48.  ERISA plaintiffs are authorized to obtain pre-judgment interest when calculating the total compensation amount for their claims. *Perez v. Bruister*, 823 F.3d 250, 274 (5th Cir. 2016) ("Prejudgment interest is available in ERISA cases."); *Whitfield v. Lindemann*, 853 F.2d 1298, 1306 (5th Cir. 1988) ("It is not awarded as a penalty, but of as compensation for use of the funds."). Pre-judgment interest furthers

ERISA's purpose. *City Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, (1995) (The "essential rationale for awarding pre-judgment interest is to ensure that an injured party is fully compensated for its loss.").

49.    Because ERISA does not mandate a rate for pre-judgment interest, state law determines the applicable interest rate. *Perez v. Bruister*, 823 F.3d 250, 274 (5th Cir. 2016). In the alternative to the Texas Insurance Code, pre-judgment interest may be calculated under Texas Finance Code Ch. 304. *Arete Partners, LP v. Gunnerman*, 643 F.3d 410, 414-15, (5th Cir. 2011). Accrual of interest starts on (1) the 180th day after a defendant receives written notice of claim or (2) the date suit is filed, whichever is earlier. Tex. Fin. Code Ann. §304.003(c), 304.104. Accrual of interest ends on the day preceding the judgment, at the prime rate of 5% per year if the prime rate if less than 5%. *Id*.

50.    Mr. Masterson requests an accounting to determine the amount earned on the funds that should have rightfully been paid to him in accordance with Insurance Code §1103.104(c).

## CLAIM FOR ATTORNEYS' FEES & COSTS

51.    Mr. Masterson seeks an award of his reasonable attorneys' fees incurred and to be incurred in the prosecution of this claim for benefits. He is entitled to recover those fees, together with his costs of court, pursuant to 29 U.S.C. §1132(g).

52.    The court may award attorneys' fees when it "can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry". *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010).

**Prayer:**

Patrick Masterson, Plaintiff, respectfully prays that upon trial of this matter or other final disposition, this Court find in his favor and against Defendant, and issue judgment against Defendant as follows:

A.    Pay to Mr. Masterson all benefits due and owing in accordance with the terms of the Plan and Policy, as well as all prejudgment interest due thereon and as allowed by law and equitable principles;

B.    Pay all reasonable attorney's fees incurred and to be incurred by Mr. Masterson in obtaining the relief sought herein, along with the costs associated with the prosecution of this matter; and

C.    All such other relief, whether at law or in equity, to which Mr. Masterson may show himself justly entitled.

Respectfully submitted,

By:_____/s/ Amar Raval_____

Amar Raval, TBA #24046682
S.D. No. 619209
Berg Plummer Johnson & Raval LLP
3700 Buffalo Speedway, Suite 1150
Houston, TX 77098
(713) 526-0200
(832) 615-2665 (Fax)
araval@bergplummer.com

ATTORNEYS FOR PLAINTIFF

9